[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Felicia Rodrigues, and the defendant were married on August 7, 1985 in Danbury, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child issue of this marriage, Ashley De Sousa, born October 11, 1990. No other minor children have been born to the plaintiff since the date of the marriage of the parties. Neither party has received state assistance.
The parties are in dispute as the cause of the breakdown of the CT Page 12264 marriage. From the evidence presented, the court finds that each party is equally at fault for the breakdown of the marriage.
The plaintiff was born on July 9, 1965. She is in good health.
The plaintiff is employed as an account payable specialist at Union Savings Bank. She will not have any opportunity for advancement until she obtains her GED and completes some accounting classes.
The plaintiff presently resides at the family residence located at 32 Purcell Drive, Danbury, Connecticut, with the minor child.
The plaintiff has a 401K plan. The present value is approximately $8050.
The parties own two automobiles that are each in both names; a 1993 Acura and a 1994 Honda. The court finds that the fair market value of the Honda is $8800 and it has no loan balance. The 1993 Acura was purchased by the defendant in February of 2000. The purchase price was approximately $12,000. The court finds that the fair market value of the Acura is $11,000 and that it has a loan balance of $9600 and an equity of $1400. The loan financing on the Acura is in the defendant's name only.
The plaintiff's financial affidavit dated June 20, 2000 shows weekly expenses totaling $726.15. The court finds that the plaintiff is not paying the $120 food bill shown on her financial affidavit as that bill is paid by her parents who also live with her. Therefore, her actual total weekly expenses is $606.15. While not shown on her financial affidavit, she has a $1000 balance that she owes for Sacred Heart School. The plaintiff has gross weekly income of $537.16, plus overtime of an average of $26.17 per week, for a total of $563.33.
The plaintiff owns crystal with a value of $500 and silverware with a value of $800. She has $500 in the account at the Savings Bank of Danbury. She has a life insurance policy in the face amount of approximately $40,000.
The defendant was born on April 26, 1965. He is in general good health.
The defendant has some problems with his teeth. He also has some problems with his lower spine and pain in his hip and leg.
The defendant is employed at A.J. Construction Company. He is on salary averaging thirty-five to forty-four hours weekly doing construction work. He has done that work for thirteen to fourteen years. He is generally employed from mid-April to mid-December. Between mid-December and mid-April, he draws unemployment compensation of $397 weekly. That CT Page 12265 will increase to approximately $407 weekly commencing December of 2000.
The defendant has two liabilities that were incurred after he vacated the family home, one to MBNA in the amount of $7000 in his name only, and the second to his father in the amount of $1000. The $7000 debt to MBNA was incurred in part to pay $3000 to $4000 to his current attorney for this action. He has bank accounts totaling $135 and a 401K plan through his former employer with a present value of $3215.88 as of December 31, 1999. The account increased by $1005.96 between January 1, 1999 and December 31, 1999. He has two accounts that he holds for his father at Union Savings — one in the amount of $4661 and the second in the amount of $458.
The defendant has weekly expenses that total $676.15 as shown on his financial affidavit.
The minor child of the parties attends Parochial school at Sacred Heart where she has been a student since Kindergarten. She is now in the fourth grade. Both the plaintiff and the defendant agree that the child should continue at Sacred Heart School but they differ as to what grade she should remain enrolled in at that school.
The cost of the child attending Sacred Heart School is $41.44 weekly. The parties agreed to split the cost for the child attending Parochial school and the defendant has paid his one-half. The plaintiff owes approximately $1000 for the current school year. If the child were to attend Immaculate High School, the cost would be between $5000 to $6000 annually.
The child has just completed the fourth grade in Parochial school.
The defendant is presently paying to the plaintiff $125 weekly support. That income is not shown on her financial affidavit.
The cost for the minor child to attend day care is $56.92 weekly. The child is in day care from 3:00 to 5:00 p.m. five days a week.
In calculating the child support guidelines, this court has used the defendant's gross weekly income of $880 for thirty-five weeks and his unemployment compensation income of $397 weekly, for seventeen weeks, for an average gross weekly income of $722.
The court finds, for purposes of child support guidelines, that the defendant's net weekly income is $551, and the plaintiff's net weekly income is $449, for a combined net weekly income of $1000, and a total basic child support obligation of $204. The cost for the plaintiff to CT Page 12266 maintain health insurance for the minor child is $14 weekly, which increases the total support obligation to $218 weekly. The defendant's share of the $218 is 55.1 percent or $120, and the plaintiff's share is 44.9 percent or $98 weekly. In addition, the defendant's share of unreimbursed medical and qualifying child care costs is 43.10 percent, and the plaintiff's share is 56.9 percent.
The parties own a family home located at 32 Purcell Drive, Danbury, Connecticut. It has a fair market value of $157,000 and a mortgage of $114,000 and an equity of $43,000. Each party contributed about one-half to the down payment for the family home, and both contributed to the payment of the mortgage until September, 1999, when the defendant stopped contributing to the mortgage.
The family home was purchased on April 27, 1992 for $137,500 plus closing costs. It was financed with a first mortgage of approximately $125,000 and approximately $15,000 down payment.
During the calendar year 1998, the plaintiff had gross income of $23,536, and the defendant had gross income of $45,976. During the calendar year 1999, the plaintiff had gross income of $25,656, and the defendant had gross income of $35,157.
This court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of § 46b-81(c) regarding the issue of property division, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees, and has considered the provisions of § 46b-56 and § 46b-56(a) regarding the issues of custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support. The court enters the following orders:
 ORDERS
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The defendant is ordered to pay to the plaintiff alimony in the sum of $30 per week.
2. Alimony shall terminate upon the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) or on CT Page 12267 the date the child reaches age eighteen. The plaintiff will have less need for alimony when the child is eighteen as she will no longer be responsible for her share of supporting the child.
3. The provisions of § 46b-86(a) and § 46b-86(b) are applicable. The term of alimony cannot be extended.
4. The plaintiff is to cooperate with the defendant for the defendant to obtain COBRA health insurance benefits at his sole expense if he so elects.
C. BY WAY OF PROPERTY ORDERS
1. The court assigns to the plaintiff 25 percent of any net recovery received by the defendant for his worker's compensation claim arising out of having fallen off a machine in 1998 or 1999.
2. The video camera located at the family residence is awarded to the defendant. All other furniture and furnishings at the family residence are awarded to the plaintiff.
3. The plaintiff is ordered to pay the balance of approximately $1000 owed to Sacred Heart School, and hold the defendant harmless therefrom.
4. The 1994 Honda is awarded to plaintiff. The defendant is to execute whatever documents are necessary to place the title solely in her name.
5. The 1993 Acura is awarded to the defendant. The plaintiff is to execute whatever documents are necessary to transfer that vehicle into his name.
6. The crystal and silverware shown on the plaintiff's financial affidavit is awarded to the plaintiff.
7. All clothing, bedding, sofa, TV, stereo and other furnishings in the possession of the defendant are awarded to the defendant.
8. The Savings Bank of Danbury account shown on the plaintiff's financial affidavit is awarded to the plaintiff.
9. The plaintiff has a life insurance policy in her name in the face amount of approximately $40,000. That policy is awarded to the plaintiff.
10. The plaintiff's 401K plan is awarded to the plaintiff.
CT Page 12268 11. The defendant is ordered to pay the liabilities shown on his financial affidavit and hold the plaintiff harmless therefrom.
12. The bank accounts shown on the defendant's financial affidavit are awarded to the defendant, including the two accounts that he shows as "convenience account for elderly father, Union Savings" one in the amount of $4661 and the second in the amount of $458.
13. The defendant's 401K plan is awarded to the defendant.
14. The plaintiff is awarded exclusive possession of the family residence located at 32 Purcell Drive, Danbury, Connecticut, until the earliest of the following events: (a) the death of the plaintiff; (b) the minor child reaches age eighteen; (c) the plaintiff no longer resides in the family residence; (d) the plaintiff no longer has custody of the minor child. Upon the earliest of these events, the family home is to be sold and the net proceeds are to be divided as follows: (a) the plaintiff is to first receive an amount equal to the amount by which the existing first mortgage has been reduced between today's date and the date of sale. The balance of the net equity is to be divided equally between the parties. During the period of time that the plaintiff is in possession of the family residence, she is to be responsible for making minor repairs to the residence. A minor repair is one in which the total cost is less than $300. The cost of any repairs that exceed $300 are to be divided equally between the parties. Whenever possible, the plaintiff is to notify the defendant in writing of the fact that she is about to incur a repair of $300 or more for the family home. During the time the plaintiff is in possession of the family residence, she is to keep the real estate taxes current and is to be solely responsible for paying all utilities.
D. BY WAY OF CUSTODY, VISITATION, SUPPORT EDUCATION
1. The wife and husband shall have joint legal custody of the minor child, and the wife shall have physical custody of the minor child, Ashley DeSousa, with visitation to the husband as follows: (a) day visits on Tuesday and Thursday 7 to 9 p.m.; (b) alternating weekends from Friday at 7 p.m. to Sunday at 7 p.m.; (c) Father's Day, father's birthday all day; (d)overnight and summer vacation consisting of two weeks of visitation for father in the summer and two weeks in the winter; (e) the parties shall alternate all legal holidays, religious holidays and the child's birthday, provided that Christmas Eve and Christmas Day shall be considered one holiday. To the extent that any holiday visitation date falls on a regular visitation date, the holiday schedule shall supersede the regular visitation date.
2. The defendant is to pay to the plaintiff support in the amount of CT Page 12269 $120 per week and is to pay 43.1 percent of unreimbursed medical and qualifying child care costs. The plaintiff is to maintain health insurance for the minor child as is available through her place of employment.
3. In addition to the child support ordered, the defendant is also to pay an amount equal to one-half of the cost or 15 percent of his support order, whichever amount is less, for the child to attend a Parochial school of the plaintiff's choice up to but not including high school.
4. The parties shall alternate the dependency exemption for the minor child with the plaintiff taking each even year and the defendant taking each odd year. The defendant shall only have the right to claim the minor child as a dependent for each odd year in which he is current in his support obligations and unreimbursed medical and qualifying day care cost obligations at the end of such calendar year.
5. The plaintiff is not to permanently relocate outside the State of Connecticut with the minor child without prior court approval.
6. The court finds that it has jurisdiction regarding the minor child under the Uniform Child Custody Jurisdiction and Enforcement Act.
7. Any pendente lite arrearages between the date this hearing completed and the date this decision is filed are not merged into the judgment and survive the judgment.
E. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
F. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns by certified mail return receipt or registered mail return receipt within thirty days after such returns have been filed for so long as there is an outstanding alimony order and/or an outstanding support order or any outstanding arrearage regarding either or both orders.
3. The plaintiff is restored her maiden name of Felicia Rodrigues.
Axelrod, J. CT Page 12270